UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CATHERINE A. RICHTER,

               Plaintiff,                   CIVIL ACTION NO. 06-12480

        v.                      DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF               MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

     This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be granted and that plaintiff's cross-motion be denied.

### II. Background

     On November 20, 2002, plaintiff filed applications for Social Security Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that she was

disabled due to chronic pain, muscle spasms and weakness in her neck, arms and shoulders,

intermittent loss of feelings in her hands and fingers, depression, and migraine headaches, with

an onset date of October 19, 2001. (Tr. 45-47, 56)[1] Plaintiff completed high school, and has a

work history including employment as a data entry operator. (Tr. 62, 65)

The Social Security Administration (SSA) denied plaintiff's applications on April 16,

2003. (Tr. 48-51, 84) Plaintiff then requested a hearing before an administrative law judge

(ALJ). (Tr. 52) The hearing was held on December 21, 2004 before ALJ Anthony B. Roshak.

(Tr. 207-236) Plaintiff, represented by appointed counsel, appeared and testified at the hearing.

The ALJ also took testimony from a vocational expert (VE).

On July 18, 2005, the ALJ issued a decision denying plaintiff's claim. (Tr. 12-22) The

ALJ determined that plaintiff had the following impairments: "cervical disc disease with chronic

pain syndrome, bilateral carpal tunnel syndrome, by history, migraine headaches and major

depressive disorder." (Tr. 21) The ALJ also determined that she did not have an impairment

that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security

regulations. (Tr. 21) The ALJ further determined that plaintiff has the residual functional

capacity (RFC) to perform:

> work-related functions except for work involving prolonged
> standing/walking, lifting/carrying more than ounces, or more than
> unskilled tasks. Further [plaintiff] requires a sit/stand option for
> the sake of comfort. [Tr. 21]

---

[1]A previous application filed for DIB and SSI was denied by ALJ Michael F. Wilenkin
on October 19, 2001. (Tr. 33-41) The record does not reflect whether plaintiff appealed that
decision, but it seems unlikely given that plaintiff filed the applications in this case less than a
month after the denial.

Taking into account that RFC, the ALJ found that plaintiff was unable to perform her past relevant work as a data entry operator and that she could not work the full range of sedentary work.[2] (Tr. 22) The ALJ also found that plaintiff has acquired work skills, such as clerical skills, that could be applied to the requirements of semi-skilled work functions of other work. (Tr. 22) Based on plaintiff's exertional capacity for sedentary work, age, education and work experience, the ALJ found that the Social Security regulations' grid directed a conclusion of "not disabled" and that there were a significant number of jobs in the national economy which plaintiff could perform, including visual inspection, ticker taking, lobby attendant, and security monitoring. (Tr. 22) Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 22) Plaintiff was 50 years-old at the time of the ALJ's decision. (Tr. 22)

On September 14, 2005, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 193) On February 8, 2006, the Appeals Council notified plaintiff that it had granted the request for review and proposed to issue a decision finding plaintiff disabled beginning November 9, 2004. The Appeals Council also notified plaintiff that it would consider any comments or new evidence submitted by plaintiff. (Tr. 201-204)

---

[2]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

On March 31, 2006, the Appeals Council issued a partially favorable decision finding that plaintiff was disabled as of the date of her fiftieth birthday, but not prior to that date. (Tr. 8-11)  The Appeals Council found that plaintiff had severe impairments including "cervical disc disease, with chronic pain syndrome; bilateral carpal tunnel syndrome, by history; migraine headaches and a major depressive disorder." (Tr. 10)  The Appeals Council also found that plaintiff did not have a listed impairment. (Tr. 10)  The Appeals Council further found that plaintiff had the RFC to perform a reduced range of work at the sedentary exertional level, given her limitations on her ability to perform work-related activities.  Those limitations restricted plaintiff to lifting minimal weights and unskilled work that allowed for a sit/stand option at will. (Tr. 10)  The Appeals Council also noted that, under the regulations, plaintiff was considered a younger individual prior to November 9, 2004, but after that date she was considered an individual closely approaching advanced age. (Tr. 10)

Given plaintiff's age, education and work experience, the Appeals Council found that Rule 201.21 compels the conclusion that, prior to November 9, 2004, she was not disabled and there were a significant number of jobs in the national economy which plaintiff could perform. (Tr. 10-11)  The Appeals Council also found that, after November 9, 2004, there was a change in age category and Rule 201.14 directed a finding that plaintiff is disabled. (Tr. 11)  The Appeals Council's decision issued on reviewing the ALJ's decision is the final decision of the Commissioner and is subject to judicial review.  20 C.F.R. §§ 404.981, 416.1481.

On June 2, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As noted above, the matter comes before the court on the

parties' cross-motions for summary judgment. Plaintiff contends that the ALJ and Appeals Council erred in assessing the opinions of her treating physicians and in assessing her credibility. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920. In Foster, id. at 354 (citations omitted), the Sixth Circuit discussed the process:

The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial

evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." <u>Key</u>, 109 F.3d at 273.

## IV. Analysis

At step four of the five-step used to evaluate both DIB and SSI claims, a determination must be made regarding a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv); 20 C.F.R. §§ 404.1545, 416.945. The term "residual functional capacity" ("RFC") is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. 20 CFR §§ 404.1545, 416.945, SS-R 96-8p. In this case, the Appeals Council found:

> The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: lifting of minimal weights that is unskilled and allows for a sit/stand option, at will. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of work at the sedentary exertional level. [Tr. 10]

Plaintiff challenges whether the RFC takes into account all of plaintiff's limitations. Specifically, plaintiff argues that the ALJ and Appeals Council failed to properly assess the opinions of her treating physicians and her credibility.

### A. Treating Physician Rule

While the Appeals Council never specifically addressed the opinions of plaintiff's treating physicians, it concurred with the ALJ regarding plaintiff's impairments and RFC (Tr. 9) and the ALJ expressly rejected the opinions of two of plaintiff's treating physicians. (Tr. 18) By arguing that the ALJ and Appeals Council failed to evaluate or give appropriate weight to the

opinion of his treating physician, plaintiff invokes the "treating physician" rule.  The "treating

physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic techniques
> and is not inconsistent with other substantial evidence in your case
> record, we will give it controlling weight.  When we doe not give
> the treating source's opinion controlling weight, we apply the
> factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section,
> as well as the factors in paragraphs (d)(3) through (d)(6) of this
> section in determining the weight to give the opinion.  We will
> always give good reasons in our notice of determination or
> decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2); 20 C.F.R. 416.927(d)(2).  As the Sixth Circuit stated in Walters v.

Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions

of treating physicians are accorded greater weight than those of physicians who examine

claimants only once."  Indeed, the treating physician rule provides that a "treating source's"

opinion regarding the nature and severity of a claimant's condition is entitled to controlling

weight if the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.

However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion

if that opinion is not supported by sufficient clinical findings or is inconsistent with other

substantial evidence in the record.  See also Warner v. Commissioner of Social Sec., 375 F.3d

387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or

substantial] deference when supported by objective medical evidence").

In this case, the ALJ, and presumably the Appeals Council, did not give controlling weight to the "rather sympathetic" opinions of two treating physicians, Dr. Gregory Hackel and Dr. David Alnajjar, because they were "not well-supported by medically acceptable clinical or laboratory diagnostic techniques" and because the doctors "provided lists of symptoms and diagnoses without any objective clinical, laboratory, or x-ray data to substantiate their opinions as to plaintiff's inability to return to work in any capacity." (Tr. 18)

### 1. Dr. Hackel's opinion

Dr. Hackel treated plaintiff from May of 1998 to, at least, September 9, 2001 (Tr. 101), and he provided two letters, one undated and one dated February 3, 2001, discussing claimant's condition. (Tr. 100, 103) In the undated letter, which was more detailed, Dr. Hackel wrote that plaintiff suffered from "chronic pain and muscle weakness with spasms in arms, shoulders and neck, with recurring numbness of the hands and fingers and suffers with uncontrolled migraine cephalaligia." (Tr. 100) Dr. Hackel also noted that "[t]est results" support his diagnosis of chronic cervical myofascial strain, chronic myofascial pain syndrome, mild sensory carpel tunnel syndrome, and cervical disc prolapse. (Tr. 100)

In reports made while treating plaintiff, Dr. Hackel indicated that plaintiff needs help with daily activities. (Tr. 100-105) On May 26, 2000, Dr. Hackel checked boxes indicating that plaintiff was limited to standing one hour a day, walking one hour a day, and sitting for thirty minute intervals. Dr. Hackel also checked boxes indicating that plaintiff could never use her hands or arms for repetitive action such as simple grasping, reaching, pushing/pulling, and fine manipulating. (Tr. 105) Dr. Hackel further found that plaintiff suffered from short-term

memory loss.  (Tr. 105)  On February 3, 2001, Dr. Hackel opined to the Family Independence

Agency (FIA) that plaintiff could not work at any job unless she complete physical therapy.  (Tr.

102)  On November 2, 2001, Dr. Hackel indicated to the FIA that plaintiff could not work at any

occupation.  (Tr. 101)

As a preliminary manner, to the extent Dr. Hackel opines that plaintiff cannot maintain

gainful employment, the ALJ is free to disregard it.  An ALJ is not bound by a treating

physician's statement that a claimant is "disabled" or "unable to work."  The regulations

specifically provide that such a statement is not a "medical opinion" and is thus not entitled to

any special deference.  20 C.F.R. §§ 404.1527(a)(2), 404.1527(e)(1); 416.927(a)(2);

416.1527(e)(1).  The question of whether a claimant is disabled is reserved entirely to the

Commissioner.  20 C.F.R. § 404.1527(e)(1); 20 C.F.R.416.927(e)(1).

Regarding Dr. Hackel's opinion on plaintiff's specific physical restrictions, the ALJ

rejected it because Dr. Hackel's reports and letters were "not well-supported by medically

acceptable clinical or laboratory diagnostic techniques" and only "provided lists of symptoms

and diagnoses without any objective clinical, laboratory, or x-ray data to substantiate their

opinions as to Claimant's inability to return to work in any capacity."  (Tr. 18)  While plaintiff in

her brief (p. 5) and Dr. Hackel in his letters (Tr. 100, 103) allude to tests supporting the

restrictions, no such tests are found in the administrative record.[3]  While Dr. Hackel treated

_____

[3]The administrative record does contain an MRI report (Tr. 110), but that MRI was
performed on April 29, 2002, which was after Dr. Hackel treated plaintiff and after he voiced his
opinion.  Moreover, as discussed below, while that MRI may provide evidence of the existence
of the impairment, it provides little support for the major restrictions Dr. Hackel opined plaintiff
had.  Also, ALJ Wilenkin's earlier denial of benefits cited to two tests performed on plaintiff, a

plaintiff for years, the record contains only one direct reference to Dr. Hackel physically examining plaintiff; on May 26, 2000 Dr. Hackel examined plaintiff and found that she was in pain when raising her arms (Tr. 104). Moreover, no mention, beyond plaintiff's subjective complaints, was ever made regarding the basis for Dr. Hackel's opinions regarding plaintiff's alleged memory loss, use of hands, ability to stand, walk or sit, and migraine headaches. Thus, Dr. Hackel's reports and letters are, for the most part, a recitation of plaintiff's subjective complaints or a listing of her symptoms and restrictions, with no explanation of how he reached his conclusions.

The other medical sources in the record provide mixed support for Dr. Hackel's opinions. On the supportive side, Dr. Alnajjar, a treating physician, did hold opinions similar to Dr. Hackel's, but the ALJ had a substantial basis in rejecting them for the reasons discussed below. In July 2002, Mark Goldberger, D.O., M.S., examined plaintiff for neck and upper back pain. During the physical examination, he found "spontaneous full range of motion without contracture," but he also concluded that plaintiff had cervicalgia and diffuse hyperreflexia. (Tr. 106-107) In terms of medical procedures, on April 28, 2002 a MRI revealed no spinal stenosis per se in the spine, mild central disc protrusion at C6-7, central disc protrusion at T3-4, and no evidence of disc herniation or cord compression (Tr. 110) and on October 16, 2002, James Jordan, D.O., performed a cervical epidural block on plaintiff. (Tr. 125-126) Viewing that evidence as a whole, Dr. Goldberger's findings, the MRI and the performance of a cervical

_____

CT scan and an x-ray, in 1997 and 1998 (Tr. 35), but the reports of those tests are not found in the record. In any case, ALJ Wilenkin noted that the results of both tests were normal. (Tr. 35)

-11-

epidural block, supports the existence of an impairment with regard to neck pain while Dr. Goldberger's finding of diffuse hyperreflexia also supports Dr. Hackel's opinion regarding muscle spasms. However, as noted above, the ALJ determined that plaintiff had the severe impairments of "cervical disc disease with chronic pain syndrome, bilateral carpal tunnel syndrome, by history, migraine headaches and major depressive disorder" (Tr. 21) and nothing in the medical sources supporting Dr. Hackel's opinion conflicts with that finding of the ALJ. The question is what restrictions those impairments caused in plaintiff's ability to work and nothing in the evidence discussed above specifically addresses plaintiff's ability to stand, sit, walk, use her hands, or remember things.

In contrast to the medical sources partially supportive of Dr. Hackel's opinions, Dr. B.D. Choi, the medical consultant who performed plaintiff's physical RFC assessment, found that plaintiff could occasionally lift ten pounds, frequently lift ten pounds, stand at least two hours in an eight hour workday, and sit about six hours in an eight hour workday. (Tr. 93) Dr. Choi also noted that plaintiff appears to exaggerate her symptoms and that her allegations of physical limitations are not supported by medical findings. (Tr. 97) On June 1, 2002, Dr. Adolfo Melicor examined claimant's cervical spine and found nothing. However, Dr. Melicor did note that his exam was very limited. (Tr. 123)

Additionally, the course of Dr. Hackel's treatment of plaintiff, and plaintiff's unwillingness to follow recommendations, fails to support his opinions. An ALJ considers use of medication and other treatment when evaluating the intensity and persistence of a plaintiff's symptoms, including pain. 20 C.F.R. 404.1529(c)(3)(iv)-(v). In this case, plaintiff's treatment

was, to some extent, conservative and plaintiff failed to follow it. In his reports, Dr. Hackel recommended that plaintiff take medication and attend physical therapy. (Tr. 104-105) At one point, Dr. Hackel even indicated that plaintiff could work at some jobs after completing physical therapy. (Tr. 102) However, it appears that plaintiff never attended physical therapy, as she told Dr. Jordan on November 18, 2002, that she had not attended physical therapy in the past two years. (Tr. 128) Dr. Hackel's undated letter also indicates that he planned for a series of c-spine injections, evaluation with a pain management clinic, and possible surgery (Tr. 100), but there is no record of any such injections and plaintiff never had surgery while under Dr. Hackel's care. Dr. Hackel and plaintiff were seemingly content with a conservative course of treatment involving medication and physical therapy for plaintiff's pain, and Dr. Hackel appears to have never provided the injections or recommended surgery. Moreover, plaintiff failed to follow the doctor's prescribed treatment. Such conservative treatment, and plaintiff's reaction to it, suggests that plaintiff's pain did not restrict plaintiff to the great lengths described by Dr. Hackel in his opinion and provides support for the ALJ's decision.

As discussed above, opinions of treating physicians only receive controlling or great weight if they are supported by sufficient clinical findings and are consistent with the objective evidence found in the record. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (2000); Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004); Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir.1993) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)). In this case, Dr. Hackel provides little support for his own opinions. Portions of the record seem to establish the existence of neck pain, but the extensive restrictions found by

Dr. Hackel are not supported by sufficient clinical findings or objective evidence, and Dr.Hackel's opinion should not be controlling. Given that lack of support, the conflicting evidence from medical sources, and the course of plaintiff's treatment, the ALJ and concurring Appeals Council had a substantial basis for rejecting Dr. Hackel's opinions.

### 2. Dr. Alnajjar's opinion

Dr. Alnajjar treated plaintiff from June 2002 to July 2003 for cervical myelopathy, chronic myofasical pain syndrome, bilateral carpal tunnel syndrome, migraine headaches, and depression. (Tr. 161-163) On November 11, 2004, Dr. Alnajjar physically examined plaintiff for an FIA report and opined that plaintiff's impairments precluded her from working at any job for twelve months. (Tr. 163) Dr. Alnajjar also indicated that plaintiff's condition would improve with treatment. (Tr. 162) In that report, Dr. Alnajjar wrote that plaintiff complained of pain in her neck, arm, hand and back, weakness in her arms, depression, and poor concentration. Dr. Alnajjar also wrote that claimant could sit, stand, and walk one to two hours in an eight-hour workday, but she could do no lifting, carrying, using either upper extremity for repetitive action, or using either lower extremity for operating foot controls. (Tr. 161-163) Dr. Alnajjar indicated that he based his opinion on his physical examination of plaintiff, which showed poor hand grip, poor coordination in her hands and arms, and weakness in her upper extremities, and on an x-ray performed in March of 2002. (Tr. 161)

As discussed above, an ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work" and the regulations specifically provide that such a statement is not a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R.

§§ 404.1527(a)(2), 404.1527(e)(1); 416.927(a)(2); 416.1527(e)(1). Consequently, Dr. Alnajjar's ultimate conclusion that plaintiff cannot work at any job is not binding on the ALJ.

At plaintiff's first visit with Dr. Alnajjar, plaintiff complained of chronic pain, migraines once in while, and depression. Dr. Alnajjar diagnosed plaintiff with chronic myofascial pain syndrome, depression, and migraines. (Tr. 122) In addition to his examination of plaintiff, Dr. Alnajjar referenced plaintiff's past medical history, including the results of medical tests, as a basis for his diagnosis. (Tr. 121-122) However, besides the one MRI mentioned above, the record is devoid of any tests finding something abnormal at the time of Dr. Alnajjar's diagnosis and Dr. Alnajjar's opinion seems to be based on plaintiff's subjective allegations of her pain. Moreover, given that Dr. Alnajjar rendered his opinion at the very first appointment he had with plaintiff, the opinion was not based upon a "longitudinal picture of [plaintiff's] impairment." 20 C.F.R. § 404.1527(d)(2)(I).

Nevertheless, Dr. Alnajjar's opinion regarding the existence of a severe impairment is not in dispute because it is consistent with the findings of the ALJ. What is in dispute are the restrictions in plaintiff's ability to work found by Dr. Alnajjar. As discussed above, Dr. Alnajjar's opinion is not supported by sufficient clinical findings or objective evidence, and it appears to be primarily based on plaintiff's subjective allegations. Moreover, there is the same conflicting evidence found in other medical sources as with Dr. Hackel's opinion. Additionally, it is notable that Dr. Alnajjar never listed any restrictions in plaintiff's activities during his actual treatment of plaintiff. Dr. Alnajjar opined that plaintiff had extensive restrictions in what she can do more than a year after he had last treated plaintiff, but none of the progress notes indicate

any restrictions on what plaintiff can do.  Given the lack of restrictions in the progress notes, the lack of objective support or clinical findings, and the conflicting evidence, the ALJ and the concurring Appeals Council had a substantial basis for rejecting Dr. Alnajjar's opinion.

### 3. Treating physicians' opinions on plaintiff's alleged mental impairments

Plaintiff also argues that the ALJ and Appeals Council failed to address the opinions of four psychologists or psychiatrists that plaintiff had a longitudinal record of severe impairment. Plaintiff, however, fails to state exactly what additional mental impairment she claims she has or what opinion the ALJ and Appeals Council failed to address.  As the Sixth Circuit noted in McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997)(quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 293-94 (1st Cir. 1995)), "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones."  Plaintiff made no effort in her brief to develop this argument, cited no law, and cited little evidence in the record to support her position.  Given the conclusory manner in which plaintiff objected to the credibility determination, the court recommends that the district court deem the issue waived.

If the Court chooses to hear this argument, both the ALJ and the Appeals Council found that plaintiff's severe impairments included "major depressive disorder" (Tr. 10, 21) and that plaintiff's depression limits her to unskilled work.  (Tr. 9, 16-17)

In March 2002, Dr. Sung-Ram Cho, a psychiatrist, examined claimant.  Dr. Cho diagnosed claimant with major depression, single episode, severe.  (Tr. 141-143)  From October

2002 to December 2002, claimant underwent therapy at Pioneer Counseling Center for major depressive disorder.  (Tr. 130-140)  On October 6, 2003, Dr. Pravin N. Soni, examined claimant for a psychiatric consultation and diagnosed claimant with major depressive disorder.  Dr. Soni also ruled out bipolar disorder.  (Tr. 146-149)  Beginning in June 2004, claimant was treated at the Oakland Psychological Clinic.  (Tr. 150)  A review of her medications from July 2004 to November 2004 shows that claimant was feeling better on her medications.  (Tr. 164)  Treatment progress notes also showed that claimant reported less depression, better sleep, and a better appetite as her treatment continued.  (Tr. 165-166, 168, 170-171, 173-174)

Dr. Thomas Tsai performed a psychiatric review on claimant in which he found claimant to be suffering from major depression.  (Tr. 85-86)  Dr. Tsai also found that claimant had mild restrictions in daily living activities and moderate restrictions in social functioning, concentration, persistence, and pace.  Dr. Tsai further found that claimant did not have episodes of decompensation.  (Tr. 87)  Moreover, in a mental RFC assessment performed by Dr. Tsai, claimant had moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, understand and remember detailed instructions, and respond appropriately to changes in her work setting.  (Tr. 89-90)  Ultimately, Dr. Tsai concluded that claimant could only perform unskilled work.  (Tr. 91)

All the psychologists and psychiatrists in the record concluded that plaintiff suffered from depression and those findings are consistent with the RFC.  The only psychiatrist who ventured an opinion on the effect of plaintiff's depression was Dr. Tsai, and his conclusion that

plaintiff is limited to unskilled work is also consistent with the RFC. There is no mental impairment or physician's opinion that plaintiff failed to address.

### B. Assessment of Plaintiff's Credibility

The ALJ determined that plaintiff's allegations regarding her impairments were not credible, and the Appeals Council adopted that determination. (Tr. 9, 10, 18-19) An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Id. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); see also Walters, supra, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a); 20 C.F.R. 416.929(a).

At the hearing, plaintiff testified regarding her alleged impairments and the effect they have on her. According to plaintiff, she is bothered by pain and discomfort everyday, and she is constantly tired. (Tr. 217) Her fatigue is exacerbated by her medications and those medications also make her nauseous. (Tr. 218) She also claimed to suffer "brutal" migraines and from

depression.  (Tr. 228-229, 231)  According to plaintiff, she can only spend fifteen to twenty minutes sitting, five to ten minutes standing, and she cannot walk an entire block.  She also cannot button buttons, pick up coins, or lift up more than a plastic cup.  Plaintiff further claimed that she has trouble pushing, pulling, bending, remembering instructions, and concentrating.  (Tr. 213-215)  Plaintiff alleges that she spends four to five hours a day watching television and two to two and a half hours a day lying down.  (Tr. 211, 226)  She does not do housework, visit friends, watch movies, play sports or hobbies, do yard work, grocery shop, or cook.  (Tr. 211-212, 227)

The ALJ rejected claimant's testimony regarding her impairments and their effects on the grounds that it was not fully credible.  (Tr. 18)  Specifically, the ALJ found that claimant's subjective allegations were not supported by "objective clinical, laboratory, or x-ray findings or by any non-medical evidence."  (Tr. 18)  The ALJ also found that there was no objective support for claimant's allegations of a need for daily recumbancy and debilitating pain on a regular basis. (Tr. 18)  The ALJ noted that there was no indicia of longstanding pain in this case, like weight loss or muscle atrophy.  (Tr. 18)  The ALJ further found that the objective evidence in the case did not "support the marked limitations in sitting, standing, walking, lifting, and carrying alleged by Claimant."  (Tr. 18)  Regarding claimant's claims of mental impairment, the ALJ found that, while the impairments existed, the treatment notes from her psychiatrist showed that claimant was less depressed, sleeping better, eating more, and having a brighter affect while on her new medication.  (Tr. 18)

In this case, plaintiff's allegations are not supported by objective evidence or clinical findings.  While the existence of some of plaintiff's impairments are supported by the record,

there is nothing suggesting plaintiff's restrictions are as extensive or severe as she claims. The opinions of treating physicians Dr. Hackel and Dr. Alnajjar do somewhat corroborate plaintiff's claims, but those opinions were properly rejected and, moreover, neither doctor found a need for daily recumbancy or restrictions in plaintiff's abilities to sit, stand and walk to the extent alleged by plaintiff. Moreover, Dr. Choi expressly found that plaintiff appeared to exaggerate her symptoms and that her allegations of physical limitations are not supported by medical findings. (Tr. 97) Dr. Jordan also noted an apparent conflict in plaintiff's allegations that she was in pain and numb simultaneously. (Tr. 128)

In her motion for summary judgment, plaintiff names some tests that determined the course of her treatment and that support her allegations of pain and daily recumbancy, but only the report from an MRI is in the record. Plaintiff also argues that she had a long-term career as a worker with an distinguished record, and that her lack of weight loss can be explained by her inactive lifestyle and medication. Even assuming that plaintiff's arguments are valid, the ALJ had a substantial basis in finding plaintiff less than credible on the basis of the entire record as described above. An ALJ's findings regarding the credibility of plaintiff is to be accorded great weight and deference, and in this case there is no basis for not upholding the credibility determination.

**V. Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
Dated: September 21, 2007            United States Magistrate Judge

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 21, 2007.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan
